Rebecca Peterson-Fisher (State Bar No. 255359)
E-mail: rpf@liupetersonfisher.com
Jennifer L. Liu (State Bar No. 279370)
E-mail: jliu@liupetersonfisher.com
**LIU PETERSON-FISHER, LLP**
1204 Burlingame Ave., Suite 3
Burlingame, CA 94010
Tel: 650.461.9000
Fax: 650.460.6967

Jennifer A. Reisch (State Bar No. 223671)
E-mail: jennifer@jenniferreischlaw.com
**REISCH LAW**
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel: 510.686.3082
Fax: 510.444.9301

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NINA BOTTO, M.D.,<br><br>    Plaintiff,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and DOES 1-10,<br><br>    Defendants. | Civil Action No.: 4:22-cv-5408<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Nina Botto, M.D. ("Plaintiff"), by and through her attorneys, Liu Peterson-Fisher, LLP and Reisch Law, alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant the Regents of the University of California and Does 1-10 (collectively, the "Regents" or "Defendants"), for violations of the federal Equal Pay Act, 29 U.S.C. § 206(d), and California's Equal Pay Act, Labor Code § 1197.5 ("CEPA"), stemming from UCSF's unlawful compensation of Dr. Botto at a rate less than that which it paid a male employee for equal and substantially similar work. Plaintiff further brings claims against Defendants for violations of Title VII of the federal Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12940 *et seq*. ("FEHA"), stemming from UCSF's discrimination against her with respect to her compensation because of her sex. Finally, Plaintiff brings claims for unpaid wages in violation of California Labor Code §§ 204 and 210 and the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq*. Because UCSF has been unwilling to meaningfully address the issues of gender equity in compensation Plaintiff has repeatedly raised, she now seeks relief in the district court.

2. Plaintiff brings this action for restitution of unpaid wages and liquidated damages under the CEPA and the federal Equal Pay Act; for compensatory damages under Title VII and the FEHA, for restitution of unpaid wages under the Unfair Competition Law, for unpaid wages and penalties under California Labor Code §§ 204 and 210, for pre-judgment interest pursuant to California Code of Civil Procedure § 3291, and for costs, expenses, and reasonable attorneys' fees pursuant to California Labor Code §§ 218.5 and 1194, California Government Code section 12965(b), and California Code of Civil Procedure section 1021.5.

3. Plaintiff demands a jury trial on all claims so triable.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the asserted claims occurred herein.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal law claims.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On April 21, 2022, Plaintiff filed a complaint and obtained an immediate right-to-sue from the California Civil Rights Department, formerly known as the Department of Fair Employment and Housing (hereinafter, "CCRD") for her claims of sex/gender discrimination under the FEHA. The complaint was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC").

8. The CCRD complaint was filed in a timely manner pursuant to Cal. Gov. Code § 12960(e)(5) insofar as it was filed within three (3) years days of the date that Plaintiff received compensation that was discriminatory because of her sex.

9. Plaintiff timely files this Complaint within one year (365 days) of her receipt of the Right to Sue from the CCRD.

## PARTIES

10. **Plaintiff Nina Botto, M.D.** ("Plaintiff" or "Dr. Botto") is a physician at UCSF Health and an Associate Professor of Dermatology at UCSF School of Medicine, where she serves as the Co-Executive Medical Director of the ambulatory division.

11. Dr. Botto resides in Greenbrae, California.

12. **Defendant Regents of the University of California** employs Dr. Botto at the University of California, San Francisco.

13. At all relevant times mentioned herein the Regents are and were Dr. Botto's employer within the meaning of the federal Equal Pay Act, 29 U.S.C. § 203(d); the California Equal Pay Act, Cal. Lab. Code § 1197.5(a)-(l); Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b); the FEHA, Cal. Gov. Code § 12926(d), and Cal. Lab. Code §§ 204 and 210.

14. The Regents employ more than 15 employees.

15. Doe Defendants: Defendants Does 1 to 10, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on

that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

16. Relationship of Defendants: All defendants compelled, coerced, aided, and/or abetted the discrimination alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

## FACTUAL ALLEGATIONS

**Dr. Botto's Background and Expertise**

17. Dr. Nina C. Botto is a board-certified dermatologist who has an active clinical practice in general dermatology and specializes in treating contact dermatitis at the University of California, San Francisco ("UCSF" or "the University"), operated by the Regents. Dr. Botto

earned her medical degree from Chicago Medical School and completed a residency in dermatology at Tufts Medical Center. She is the Director of the Occupational and Contact Dermatitis Clinic and is the sole faculty member responsible for overseeing patch testing at UCSF, a diagnostic procedure undertaken for the investigation and confirmation of substances that produce allergic contact dermatitis. Dr. Botto has served on the Board of the American Contact Dermatitis Society and has published dozens of articles about the treatment of contact dermatitis. Dr. Botto is also a member of the elite, invitation-only research consortium North American Contact Dermatitis Group. She is widely recognized as one of the leading experts on patch testing in North America.

18. The University of California, San Francisco is one of the top-ranked medical schools in the United States, and UCSF Medical Center is one of the best hospitals in the United States.

**Dr. Botto's Employment History and Leadership Role in UCSF's Dermatology Department**

19. UCSF hired Dr. Botto as a Clinical Instructor in the Department of Dermatology within the School of Medicine in January 2013. She has been promoted several times since then and currently holds the position of Associate Clinical Professor. She is also the Co-Executive Medical Director for the ambulatory division ("Co-EMD") of the Dermatology department ("the Department").

20. Dr. Botto's job responsibilities, like other clinical faculty, include teaching medical residents, providing clinical services to patients, publishing scientific research, and service to the University. Dr. Botto is a part of UCSF's core teaching faculty, and residents rotate through her clinic as part of their regular residency core curriculum. Dr. Botto's clinical practice includes both general dermatology and specialty patch testing clinics. Her service to the University has included both committee service and administrative leadership roles.

21. Dr. Botto has dedicated herself to serving the University and to the Department. As the Co-EMD, she is considered one of the department's top leaders. Dr. Botto has served as Co-EMD since 2018, and prior to that served as the Department's Chief Experience Officer. As Chief Experience Officer, Dr. Botto worked to build community within the department. In addition, Dr.

Botto has served as the dermatology department's leadership representative on UCSF's diversity, equity, and inclusion ("DEI") committee, and trained faculty and residents on relationship-centered communication across difference, particularly racial difference. These trainings led to implementation of Balint groups - regular meetings among physicians to discuss the emotional side of the clinical work that they do. Dr. Botto has also served on a task force formed to address issues identified in a departmental climate survey, and she currently chairs the search committee for the next Executive Medical Director in primary care.

22. USCF's dermatology department offers specialty services in a number of areas: adult atopic dermatitis, aging skin, autoimmune issues, birthmarks and vascular anomalies, cutaneous lymphomas, clinical trials, dermatology surgery, contact dermatitis and occupational dermatitis, hair disorders, hidradenitis suppurativa, high risk skin cancer, HIV dermatology, pediatric dermatology, psoriasis, pigmented lesions/melanoma, skin of color, and ulcer/wound care. Dr. Botto's patch testing clinics are part of the contact dermatitis specialty service.

23. Dr. Botto and other dermatologists in clinical practice at UCSF are paid according to a compensation structure which compensates them at different rates for different components of their jobs. For their clinical practice, UCSF charges Dr. Botto and other dermatologists for overhead expenses and then pays them the net profits in the form of quarterly bonuses.

24. Although patch testing is not surgical, Dr. Botto has been and continues to be charged a surgical overhead rate for her patch testing clinics. Dr. Botto is also separately charged for supplies and staffing specific to patch testing, which further reduces the rate at which she is compensated for her clinical work.

25. Because UCSF withholds more from Dr. Botto's compensation for rent, labor and supplies – and separately charges her for supplies and staffing that are specific to her clinic – she is effectively compensated at a lower rate than the rate paid to other UCSF dermatologists who run comparable non-surgical specialty clinics, including at least one male colleague, Dr. Wilson Liao.

26. Dr. Liao specializes in the study and treatment of psoriasis and is the Director of the UCSF Psoriasis and Skin Treatment Center. Dr. Liao and Dr. Botto perform substantially similar work under the same working conditions. Both of them teach residents, operate clinical practices,

publish scientific research, and provide service to the University. Both of them work at the same establishment, UCSF Medical Center. However, upon information and belief, UCSF withholds overhead charges from Dr. Liao's compensation at a substantially lower rate than it does for Dr. Botto. UCSF charges Dr. Botto inflated overhead for patch testing, and, upon information and belief, does not impose such charges on Dr. Liao. As a result of these differences, Dr. Botto is effectively compensated at a lower rate than Dr. Liao for substantially similar and equal clinical work.

**Plaintiff's Boss, Former Department Chair Dr. Bruce Wintroub, Displays Sex Bias and Refuses to Address Plaintiff's Inequitable Compensation.**

27. Dr. Botto repeatedly raised concerns about the way in which UCSF compensated her for patch testing, which reduced her effective rate of pay for the clinical component of her job, with the department's former Chair, Dr. Bruce Wintroub. However, Dr. Wintroub repeatedly dismissed or ignored Dr. Botto's concerns and failed to take any effective steps to correct the unfair and inequitable pay practices.

28. Dr. Wintroub's compensation decisions with respect to Dr. Botto, including his refusal to address or correct UCSF's unequal compensation of Dr. Botto for her patch testing clinical work even after she raised this issue with him on multiple occasions, were substantially motivated by sexist attitudes and gender bias toward Dr. Botto and female physicians in general, which he expressed on numerous occasions through words and actions directed at or about Dr. Botto and other women in the Department.

29. For example, Dr. Wintroub repeatedly derided and diminished Dr. Botto's clinical work and her leadership in the Department in subtle and not-so-subtle ways. On at least one occasion, Dr. Botto dismissively referred to patch testing as a "lab test," ignoring the specialized knowledge, expertise, and skill set required to conduct patch testing and to run a patch testing clinic, as well as Dr. Botto's status as one of the top clinicians and experts in this field in the country. On another occasion, during the period when Dr. Botto was playing a key leadership role in the Department as its (first ever) Chief Experience Officer, he referred to Dr. Botto as the "social chair" in front of the entire Department, belittling this important role and the significant

skill and effort required to fulfill it.

30. Dr. Botto is also aware that Dr. Wintroub exhibited gender bias and behaved in a sexist manner toward other female physicians. For example, Dr. Botto learned that on one occasion, referring to a female physician, he said in a demeaning manner that someone needed to "sit her down and give her a talking to," as though she were a child. He also repeatedly addressed a pregnant medical resident as "mama."

**Dr. Botto is Appointed as Co-Executive Medical Director and Performs the Additional Work of this Role Without Pay for Over Two Years.**

31. Beginning in or around 2016, Dr. Botto became increasingly involved in overseeing clinical operations within the Department and, in or about November 2018, she and Dr. Jack Resneck, then-Vice Chair of the Department, became Co-Executive Medical Directors of the ambulatory division.

32. The primary duties and responsibilities of the Co-EMDs are to oversee the Department's clinical operations and to liaise with UCSF Medical Center, external stakeholders, and various departments at UCSF regarding systemic issues and medical center initiatives. This includes, but is not limited to: interfacing with ambulatory leadership; attending department leadership meetings and department faculty meetings; participating in discussions of departmental budgeting and staffing; nursing management; revenue cycle management; faculty recruitment, mentoring and retention; implementing diversity, equity, and inclusion (DEI) practices and initiatives; sharing oversight of space maintenance and upgrades; supporting mentorship of clinical division chiefs; strategic planning; quality and safety oversight; external partnership management; and crisis management.

33. Since 2018, Dr. Botto and Dr. Resneck have worked as partners to fulfill their duties and responsibilities as Co-EMDs on an equal basis. Their work as Co-EMDs has required Dr. Botto and Dr. Resneck to exercise substantially similar and substantially equal levels of skill and to expend substantially similar and substantially equal amounts of effort in performing the work and fulfilling their responsibilities as Co-EMDs.

**Dr. Botto Discovers She is Being Paid Less Than Her Male Colleagues for Substantially Similar Work, But UCSF Refuses to Correct the Disparities.**

34. In the course of attempting to negotiate a better compensation rate and structure for her patch testing (clinical) work with Dr. Wintroub in the fall of 2020, Dr. Botto learned that Dr. Resneck had been receiving "base" pay of $89,000 annually for his work as a Co-EMD in addition to being credited approximately $41,000 in benefits costs. Effectively, UCSF had been compensating Dr. Resneck for his work as a Co-EMD at a rate of $130,000 per year while Dr. Botto's compensation for her work in the same role was zero.

35. Dr. Botto was shocked to learn she had been paid $130,000 less than her male colleague for the same work for over two years. Dr. Resneck was also appalled at the discrepancy.

36. Upon information and belief, Dr. Wintroub was responsible for the decision not to pay a "base" to Dr. Botto for her role as Co-EMD.

37. When this glaring disparity was brought to his attention, Dr. Wintroub agreed to provide equivalent "base" and benefits compensation to Dr. Botto for her work as Co-EMD prospectively, effective July 1, 2020. However, when Dr. Botto asked Dr. Wintroub about the back pay she was owed for work she had performed in the role since November 2018 without any "base" compensation, he laughed at her.

38. The unequal and discriminatory treatment to which Dr. Botto has been subjected has affected her profoundly, particularly in light of her significant involvement in efforts to advance diversity, equity and inclusion at UCSF and UCSF's purported commitment to equity.

39. In 2021, Dr. Wintroub stepped down as Chair and Dr. Timothy Berger became the Interim Chair of the Department. In a meeting on or about February 10, 2022, Dr. Botto raised the issues of her unpaid back pay for performing the Co-EMD role from 2018 to 2020 and the unfair patch testing compensation structure with Dr. Berger. During this meeting, Dr. Botto expressly called out the disparity in compensation between herself and Dr. Resneck for the same Co-EMD work as an issue of (un)equal pay and gender (in)equity. Dr. Botto raised these issues in the hopes that Dr. Berger, unlike Dr. Wintroub, would be willing to resolve them. Dr. Berger said he would

look into the matter.

40. Six days later, Dr. Berger sent an email to Dr. Botto stating that it would not be possible to pay her for her Co-EMD work for the period prior to July 2020 because the Department's budget closes yearly.

41. Since then, UCSF has made no effort to address its ongoing unequal and unfair compensation of Dr. Botto for the patch testing component of her clinical work, nor has it paid Dr. Botto any wages at all for the work she performed as Co-EMD prior to July 2020.

## First Claim for Relief

## Unequal Pay in Violation of Federal Equal Pay Act, 20 U.S.C. §206(d)

42. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

43. UCSF is an employer subject to the Equal Pay Act, 29 U.S.C. §206(d).

44. At all relevant times, UCSF has discriminated against Plaintiff on the basis of sex by paying her wages at a rate less than the rate paid to one or more male employees within the Dermatology Department for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

45. At all relevant times, Dr. Botto, Dr. Resneck, and Dr. Liao have worked in the same establishment.

46. During the period from November 2018 until June 30, 2020, Defendants paid Dr. Botto zero dollars and paid Dr. Resneck $130,000 annually for their work as Co-EMDs, jobs which require equal skill, effort, and responsibility, and which were performed under similar working conditions.

47. Defendants have paid, and continue to pay wages to Dr. Botto at a lower rate than Dr. Liao for her clinical specialty services practice, which requires equal skill, effort, and responsibility as Dr. Liao's clinical specialty services practice and is performed under similar working conditions.

48. Dr. Botto, Dr. Resneck, and Dr. Liao performed equal work as clinical faculty at USCF. Each of them is responsible for teaching residents, clinical practice, publishing scientific

research, and service to the University. The performance of these duties requires equal skill, effort, and responsibility, and these duties are and have been performed under similar working conditions at UCSF.

49. UCSF's failure to pay Dr. Botto equal wages to men for performing substantially equal work is not justified by any lawful reason.

50. At all relevant times, UCSF has known or should have known of the pay disparities between Dr. Botto and her male colleagues, yet UCSF has failed to equalize Dr. Botto's rate of pay for substantially equal work.

51. UCSF's payment of unequal wages for substantially equal work is and at all relevant times has been willful.

52. Dr. Botto is entitled to recover her lost wages and benefits, including interest thereon, and an additional equal amount as liquidated damages. Plaintiff is further entitled to equitable relief to raise her compensation rate in the future, and to payment of her costs of suit and reasonable attorney's fees.

**Second Claim for Relief**

**Unequal Pay in Violation of California Equal Pay Act, Cal. Lab. Code § 1197.5**

53. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

54. UCSF is an employer within the meaning of the California Equal Pay Act, Labor Code Section 1197.5, and is a public employer within the meaning of subdivision (l) of that law.

55. At all relevant times, UCSF has paid Dr. Botto at a lower rate than that which it pays or has paid one or more male clinical faculty members in the Dermatology department for work that is substantially similar when viewed as a composite of skill, effort, and responsibility, and is performed under the same or similar working conditions.

56. At all relevant times, Dr. Botto and Dr. Resneck's work as Co-EMDs was substantially similar when viewed as a composite of skill, effort, and responsibility, and was performed under the same or similar working conditions.

57. During the period from November 2018 up to and including June 30, 2020, Defendants compensated Dr. Botto at a rate of zero and Dr. Resneck at a rate of $130,000 annually for their work as Co-EMDs.

58. At all relevant times, Dr. Botto's clinical specialty services work running the patch testing clinic and Dr. Liao's clinical specialty services work running the psoriasis clinic is and was substantially similar when viewed as a composite of skill, effort, and responsibility and is performed under similar working conditions.

59. Upon information and belief, at all relevant times, Defendants have paid, and continue to pay, Dr. Botto at a lower rate than one or more of her male colleagues, including Dr. Liao, for their clinical specialty services work. By overcharging Dr. Botto for overhead and withholding amounts from her compensation for the patch testing clinic component of her clinical practice that are not withheld from the compensation of Dr. Liao and, on information and belief, others who perform substantially similar work running a non-surgical specialty clinic, UCSF has effectively compensated Dr. Botto for this work at a rate lower than the rate which it pays one or more employees of the opposite sex.

60. The differences in pay for Dr. Botto's work as Co-EMD and for her clinical specialty services practice are not based on seniority, merit, quality or quantity of production, or any bona fide factor other than sex.

61. UCSF's failure to pay Dr. Botto equal wages to men for performing substantially equal or similar work is not justified by any lawful reason.

62. At all relevant times, UCSF has known or should have known of the pay disparities between Dr. Botto and her male colleagues, yet UCSF has failed to equalize Dr. Botto's rate of pay for substantially similar work.

63. UCSF's payment of unequal wages for substantially similar work is and at all relevant times has been willful.

64. Dr. Botto is entitled to recover her lost wages and benefits, including interest thereon, and an additional equal amount as liquidated damages. Plaintiff is further entitled to

equitable relief to raise her compensation rate in the future, and to payment of her costs of suit and reasonable attorney's fees.

### Third Claim for Relief

### Compensation Discrimination Based on Sex

### in Violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq.

65. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

66. Title VII prohibits employers from discriminating on the basis of sex against any individual with respect to her compensation, terms, conditions, or privileges of employment. 42 U.S.C. 2000e-2(a).

67. But for Dr. Botto's sex, Defendants would have compensated her at a higher rate.

68. As a direct and proximate result of Defendants' violation of Title VII, Dr. Botto has suffered economic damages and emotional distress.

69. Dr. Botto is entitled to compensatory damages, equitable relief, attorneys' fees, and costs of suit.

### Fourth Claim for Relief

### Compensation Discrimination Based on Sex/Gender

### in Violation of Cal. Fair Employment and Housing Act, Gov. Code § 12940, et seq.

70. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

71. The FEHA prohibits employers from discriminating against any person on the basis of sex with respect to "compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code § 12940(a).

72. Defendants have discriminated and continue to discriminate against Dr. Botto on the basis of sex by paying her less than similarly situated male employees and/or by paying her at a rate that is less than the rate(s) at which it pays one or more male employees for equal or substantially similar work.

73. Dr. Botto's sex was a substantial motivating factor in Defendants' decisions to pay her a lower rate of compensation for her work as a Co-EMD and for her patch testing clinical work.

74. As a direct and proximate result of Defendants' violation of FEHA, Dr. Botto has suffered economic damages and emotional distress.

75. Dr. Botto is entitled to compensatory damages, equitable relief, attorneys' fees, and costs of suit.

### Fifth Claim for Relief

### Unpaid Wages

### in Violation of California Labor Code §§ 204, 210

74. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

75. California Labor Code § 204 makes all wages earned by a professional employee due and payable on or before the 26th day of the month during which the labor was performed.

76. California Labor Code § 210 imposes a monetary penalty on employers who fail to timely pay employees all wages earned as provided in California Labor Code § 204.

77. From November 2018 up through and including June 30, 2020, Defendants failed to pay Dr. Botto wages she earned for work she performed in her role as Co-EMD.

78. Dr. Botto is entitled to her unpaid wages and to statutory penalties pursuant to Labor Code § 210(a), and attorneys' fees and costs of suit.

### Fifth Claim for Relief

### Unfair Competition

### in Violation of California Business & Professions Code §§ 17200 *et seq.*

79. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

80. Unfair practices prohibited by California's Unfair Competition Law ("UCL") include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

81. Defendants committed unlawful and unfair business practices, including but not limited to failing to pay Dr. Botto all wages earned for work performed and failing to compensate Dr. Botto at a rate equal to that of her male colleagues for substantially similar work.

82. Dr. Botto is entitled to restitution of her unpaid wages for her work as Co-EMD between November 2018 and June 30, 2020, and to attorneys' fees and costs of suit.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays for the following relief:

A. An order declaring the Defendants have violated the California Equal Pay Act in paying Plaintiff at a rate less than men for substantially similar work;

B. An order declaring that Defendants have violated the federal Equal Pay Act in paying Plaintiff wages less than that which they have paid men for equal work;

C. An order declaring that Defendants have engaged in sex discrimination in violation of Title VII of the Civil Rights Act and the California Fair Employment and Housing Act;

D. Restitution of unpaid wages pursuant to California Labor Code §§ 204, 210 and for the wage differential owed under Labor Code § 1197.5;

E. Liquidated damages in an amount equal to the wage differential owed under the California Equal Pay Act and the federal Equal Pay Act;

F. An award of economic, non-economic, and compensatory damages to be determined at trial;

G. Pre and post-judgment interest;

H. A permanent injunction requiring Defendants to compensate Dr. Botto equally with her male colleagues for substantially similar and equal work;

I. Continuing jurisdiction over this action to monitor Defendant's compliance with this Court's orders;

J. An award of costs and attorney fees,

K. Any other relief or remedy that may be deemed just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to a jury trial.

DATED: September 22, 2022                    Respectfully submitted,

**LIU PETERSON FISHER, LLP**
**REISCH LAW**

By:      /s/  *Rebecca Peterson-Fisher*

Rebecca Peterson-Fisher
Jennifer L. Liu
**LIU PETERSON FISHER, LLP**
800 Menlo Avenue, Suite 200
Menlo Park, CA 94025
Tel: 650.461.9000
Fax: 650.460.6967

Jennifer A. Reisch
**REISCH LAW**
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel: 510.686.3082
Fax: 510.444.9301

Attorneys for Plaintiff